Peter N. GEORGIADES

v.

Helen MARTIN–TRIGONA, Anthony R. Martin-Trigona, Appellants.

Peter N. GEORGIADES

v.

Helen MARTIN–TRIGONA, Appellant.

Nos. 82–2382, 83–1066.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 21, 1984.

Decided March 13, 1984.

---

**15.** Reply Brief at 12.

**16.** The Act makes no reference at all to FERC or utility ratemaking authority.

Anthony R. Martin-Trigona, pro se.

Steven M. Levine, with whom David Florin, Washington, D.C., was on brief, for appellee.

Before TAMM, EDWARDS and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Plaintiff-appellee Peter N. Georgiades commenced this action to recover legal fees defendant-appellant Helen Martin-Trigona agreed to pay for representation of her son, Anthony R. Martin-Trigona, in various matters. Georgiades invoked the District Court's diversity jurisdiction, 28 U.S.C. § 1332 (1976), which requires an amount in controversy in excess of $10,000.[1] Helen Martin-Trigona has appealed from a judgment entered on a jury verdict in the amount of $10,273.45.

Throughout these proceedings Helen Martin-Trigona, although she does not have *in forma pauperis* status, has been unrepresented by counsel. She attempted to raise a threshold objection in the District Court, and renews it here, with respect to the amount in controversy. Her contention is that Georgiades has impermissibly aggregated his individual claim with that of a law firm with which he became associated during the course of his representation of Anthony R. Martin-Trigona. While she does not dispute that the total amount billed and still unpaid exceeds $10,000,[2] she asserts that neither Georgiades as an individual nor the firm has a claim that, standing alone, reaches the jurisdictional amount.

▇ The District Court, by fiat, denied Helen Martin-Trigona's motion to dismiss for lack of the requisite amount in controversy, Appellants' Appendix (App.) 5; it did not explain why it denied the motion and neither party has supplied us with a transcript[3] from which we can determine

---

1. The section states that "[t]he district court shall have original jurisdiction of all civil actions [between citizens of different States] where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs."

2. Helen Martin-Trigona in fact made several $500 payments in 1981–1982 for Georgiades'

representation of her son. *See* Complaint ¶¶ 7, 9, 17.

3. Anthony R. Martin-Trigona has repeatedly insisted that he tried, in vain, to order a limited portion of the transcript on his mother's behalf. He did write to the court reporter requesting "the *cross-examination* and *recross* and *redirect* examination of ... Peter Georgiades," and estimated that this testimony would not "amount[ ]

whether Georgiades, in his own right, has a claim in excess of $10,000.[4] We therefore vacate the judgment from which Helen Martin-Trigona appeals, and remand the case for a particularized determination by the District Court as to the amount of Georgiades' claim.

■ When Georgiades commenced the representation for which he seeks full payment,[5] he worked as a sole practitioner. Before his unpaid billings to Helen Martin-Trigona reached $10,000, he joined a law firm, Samuel J. Reich & Associates, a professional corporation. In a letter dated November 12, 1981, Georgiades informed Helen Martin-Trigona that he was "writing [her] on different stationery," and that "[t]his [was] because [his] Pittsburgh office ha[d] recently merged with Samuel J. Reich & Associates." Supplemental Appendix of Appellee 53. Thereafter, all billings to Helen Martin-Trigona issued on the firm's letterhead.

The question the District Court should address with precision on remand is whether the fees billed on the Samuel J. Reich & Associates letterhead are owed to the firm rather than to Georgiades individually. We require this inquiry because governing Supreme Court precedent instructs that traditional rules against aggregating claims to arrive at the 28 U.S.C. § 1332 amount in controversy remain in place; it is not within the province of lower federal courts to liberalize them. *See Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). Separate and distinct claims, regardless of whether they share a community of interest or originate in a single transaction or event, may not be aggregated to satisfy the jurisdictional amount-in-controversy requirement. *See, e.g., Niagara Fire Insurance Co. v. Dyess Furniture Co.*, 292 F.2d 232 (5th Cir.1961) (no jurisdiction where three insurance companies, each insuring a percentage of insured's premises, bring declaratory judgment action against insured seeking declaration of no liability for damage caused in windstorm; together, but not individually, claims exceed $10,000); *Oxman v. Hellene Pessl, Inc.*, 279 F.Supp. 65 (S.D.N.Y.1968) (no jurisdiction where father seeks to aggregate his claim for daughter's medical expenses

to very many pages." Appellants' Appendix (App.) 7 (emphasis in original). The court reporter replied that "[t]he portion ... requested is quite long, almost 100 pages"; she sought advice whether to "start transcribing the testimony requested, or not." App. 8. Neither mother nor son points to any cogent response to the reporter's inquiry.

At one point, Anthony R. Martin-Trigona wrote to the reporter explaining "[t]here is a lot of chaff in the cross and recross." He wanted her "to extract [only] the wheat." Letter from Anthony R. Martin-Trigona to Santa Zizzo (Feb. 23, 1983), *annexed to* Response to Opposition to Motion for Transcripts (filed Oct. 3, 1983). Discriminating between wheat and chaff, however, is not part of the reporter's function. Anthony R. Martin-Trigona, at various times, estimated that only a "few pages" were involved, "four or five," "not more than 10," "perhaps a dozen," "10 or 15 pages," "up to 15." He commented in his February 23, 1983, letter that he and the reporter were "not on the same wave length." That apparently was so, but the pinpointing responsibility is the requester's, not the reporter's or the court's.

Nor was there any tenable basis for the attempt, rejected by a motions panel of this court, to obtain the transcript by court order and at government expense. *See Georgiades v. Martin-Trigona*, No. 82–01763 (D.C.Cir. Oct. 20, 1983).

**4.** It is the burden of the party claiming subject matter jurisdiction to demonstrate that it exists. *See, e.g., McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). In that light, appellee might have ordered the transcript, or portions thereof, if indeed the trial record bears out the existence of subject matter jurisdiction, as appellee, without supporting detail, now asserts it does.

Georgiades contends that he claimed a sum in excess of $10,000 "in good faith" and is not required to show more. Brief for Appellee at 11–13. He cites inapposite cases relating to the appropriate standard for determining whether jurisdiction exists when alleged damages are not susceptible to precise calculation. *E.g., St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). That is not the issue here. The amounts billed and unpaid are not in doubt. The unanswered question is whether each of the unpaid bills is legitimately claimed by Georgiades rather than by the law firm with which he became associated.

**5.** *See supra* note 2.

with daughter's claim for compensatory and punitive damages); *Employers Mutual Casualty Co. v. Maggart,* 261 F.Supp. 768 (W.D.Tex.1966) (no jurisdiction where compensation carrier seeks to aggregate claims of spouse and daughter arising out of worker's death). *See generally* C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3704 (1976 & Supp.1983) (aggregation of claims).

■ Prior to trial, Helen Martin-Trigona addressed interrogatories to Georgiades seeking a detailed explanation of the relationship between Georgiades and Samuel J. Reich & Associates and information concerning bills "issued on the billhead of Reich." App. 26. Georgiades volunteered to file answers by November 19, 1982. App. 5. He not only failed to meet that deadline, but, in fact, now admits that the interrogatories remain to this day unanswered. Brief for Appellee at 15.

Georgiades asserts that his failure to respond to the interrogatories occasioned no harm because "[t]he information sought, that [he] was an 'employee' [of the Reich firm] with its attendant ramifications, was fully explained at trial." *Id.* at 16. We cannot tell whether one of those ramifications was that fees for work done once Georgiades joined the firm belonged to the firm, rather than to Georgiades individually. Nor does Georgiades' cryptic representation on brief that he "remained personally liable to his 'new' firm to collect his fees from [Helen Martin-Trigona]," *id.* at 13 n. 3, assure us that the fees accruing after Georgiades joined Reich were Georgiades' rather than the firm's. All we can say at this juncture is that Georgiades apparently lost sight of the rules against aggregation when he urged: "The matter

was admittedly between citizens of different states and the jury awarded the Plaintiff an amount in excess of $10,000. Therefore, Section 1332 was satisfied." *Id.* at 7A–7B. Section 1332 was not satisfied if Georgiades arrived at the jurisdictional amount by tacking on to fees he billed as a sole practitioner a sum properly claimed by the Reich firm.

If indeed Georgiades has a claim in his own right that exceeds $10,000, and the District Court explains with particularity why that is so, the judgment on the jury verdict may be reinstated.[6] If, on the other hand, Georgiades combined the Reich firm's separate and distinct claim with his own, this case does not belong in federal court and should be dismissed for lack of subject matter jurisdiction.

■ Our remand necessitates further proceedings involving an unrepresented defendant. We are confident that the District Court will supervise those proceedings so as to prevent recurrence of an omission such as Georgiades' forgotten undertaking to serve answers to interrogatories, and to ensure a full and fair determination of the threshold jurisdictional issue. We note in this context that the District Court properly denied Helen Martin-Trigona's motion for the admission of her son, Anthony R. Martin-Trigona, *pro hac vice,* as her counsel. Anthony R. Martin-Trigona is not a member of the bar of any court. He may appear *pro se* but is not qualified to appear in the District Court or in this court as counsel for others. *See, e.g., Herrera-Venegas v. Sanchez-Rivera,* 681 F.2d 41, 42 (1st Cir.1982) ("federal courts have consistently rejected attempts at third-party lay representation") (citations omitted).[7]

---

**6.** The briefs for appellants "present[ ] a pot pourri" of alleged errors. *See* Brief for Appellants at 31. Apart from the root question of federal subject matter jurisdiction, the objections raised are insubstantial and require no discussion. *See* 28 U.S.C. § 2111 (1976); FED.R. CIV.P. 61.

**7.** Numerous courts have recognized that even defendants in criminal cases do not have a right to be represented by a person not admitted to

the bar. *See, e.g., United States v. Grismore,* 546 F.2d 844, 847 (10th Cir.1976); *United States v. Jordan,* 508 F.2d 750, 753 (7th Cir.), *cert. denied,* 423 U.S. 842, 96 S.Ct. 76, 46 L.Ed.2d 62 (1975). A fortiori, a civil litigant has no such right. *See Herrera-Venegas v. Sanchez-Rivera, supra. See also* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases *personally* or *by counsel* as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.")

For the reasons stated, the judgment from which Helen Martin-Trigona appeals is vacated and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

(emphasis added). Assuming discretion in the trial court to permit a litigant to select as her representative a person not admitted to practice, *see United States v. Whitesel,* 543 F.2d 1176, 1180 (6th Cir.1976), *cert. denied,* 431 U.S. 967, 97 S.Ct. 2924, 53 L.Ed.2d 1062 (1977), we know of no instance in which an appellate court has overturned the judgment of a court of first instance disallowing such representation. *But see* Weckstein, *Limitations on the Right to Counsel: The Unauthorized Practice of Law,* 1978 UTAH L.REV. 649, 677.

The District Court in this case noted particularly that Anthony R. Martin-Trigona was expected to be a principal witness for his mother.

*Georgiades v. Martin-Trigona,* No. 82–1763 (D.D.C. Nov. 4, 1982), *reprinted in* App. 27. *Cf. Hickman v. Taylor,* 329 U.S. 495, 517, 67 S.Ct. 385, 396, 91 L.Ed. 451 (1947) (Jackson, J., concurring) (advocate's role inconsistent with that of witness). The denial of Helen Martin-Trigona's extraordinary request for representation by her son, in short, was solidly grounded and commands this court's respect.

Since the District Court may, on remand, find there is no federal jurisdiction to entertain this suit, we deem it unnecessary at this point to decide whether Anthony R. Martin-Trigona was an appropriate candidate for intervention under either FED.R.CIV.P. 24(a) or (b).